ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| LUIS FERNANDO DOMENECH CHAVES<br><br>Apelado<br><br>v.<br><br>SYLVIA I. GONZÁLEZ SANTIAGO<br><br>Apelante | **TA2025AP00534** | *Apelación* se acoge como *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Ponce<br><br>Civil Núm. J DI2011-1233<br><br>Sobre: Divorcio (Pensión Excónyuge) |

Panel integrado por su presidenta la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 5 de diciembre de 2025.

Comparece ante este foro la Sra. Sylvia I. González Santiago (señora González o "la peticionaria") y nos solicita que revisemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, notificada el 9 de octubre de 2025. Mediante el referido dictamen, el foro primario declaró *Ha Lugar* una *Moción en Solicitud de Relevo de Pensión Excónyuge* instada por el Sr. Luis F. Domenech Chaves (señor Domenech o "el recurrido"). Por consiguiente, ordenó el relevo de la pensión alimentaria excónyuge a favor de la peticionaria debido a los cambios significativos en la capacidad económica del recurrido, retroactivo a la fecha de dicha solicitud.

Examinada la naturaleza del recurso, lo acogemos como *certiorari* y conservamos su actual identificación alfanumérica para propósitos administrativos.

Por los fundamentos que expondremos a continuación, **EXPEDIMOS** el auto de *certiorari* y **CONFIRMAMOS** la *Resolución* recurrida.

## I.

Según surge del expediente, el 29 de mayo de 2012, el foro primario dictó una *Sentencia* decretando el divorcio entre las partes de epígrafe. El 22 de enero de 2013, las partes presentaron una *Moción Sometiendo Estipulación Transaccional sobre Pensión Excónyuge*. En esta, establecieron que el recurrido pagaría una pensión excónyuge de $2,800.00 mensuales, más plan médico a la peticionaria. Así las cosas, el 29 de enero de 2013, el foro primario dictó una *Resolución* en la cual acogió y aprobó la estipulación presentada.

Posteriormente, el 11 de septiembre de 2023, el señor Domenech presentó una *Moción en Solicitud de Relevo de Pensión Excónyuge*.[1] En esencia, alegó que el 24 de julio de 2023, a sus 66 años, presentó su notificación de renuncia y retiro a los proveedores a quienes brindaba servicios en su práctica de medicina general, siendo efectivo al 26 de octubre de 2023. Por ello, arguyó que su nueva realidad económica le impediría continuar asumiendo el pago mensual de pensión excónyuge. Asimismo, señaló que la señora González no se quedaría desprovista económicamente, puesto que, recibiría la cuantía de $865.00 como excónyuge beneficiaria ante la Administración del Seguro Social. Consecuentemente, solicitó el relevo de su obligación alimentaria.

En desacuerdo, el 29 de septiembre de 2023, la señora González presentó una *Moción sobre Representación Profesional y en Oposición de Relevo de Pensión Ex*

---

[1] Véase, *Moción en Solicitud de Relevo de Pensión Excónyuge*, apéndice I en el recurso de *certiorari*.

*Cónyuge y Sobre Otros Extremos*.[2] En síntesis, alegó que el recurrido era médico de profesión, con una práctica lucrativa; que había heredado una propiedad valorada en más de siete millones de dólares; que no se había realizado un descubrimiento de prueba en el que se pasara juicio sobre la capacidad económica; y que era incorrecto que fuera a recibir los beneficios del seguro social en noviembre. Por lo que, no procedía el relevo de la pensión excónyuge.

El 23 de enero de 2025, el señor Domenech presentó una *Moción en Solicitud de Desestimación de Solicitud de Continuación de Alimentos Ex Cónyuge de la Demandada y Relevo Total de Obligación Alimentaria del Demandante ante Condición Crónica de Salud*.[3] En primer lugar, alegó que la peticionaria había abandonado el caso por más de seis (6) meses, y que tampoco había probado que éste contara con capacidad económica, y ella necesitara recibir la pensión excónyuge. Por otro lado, arguyó que la señora González contaba con ingresos propios del Seguro Social para cubrir sus necesidades personales. Finalmente, que se encontraba totalmente inhabilitado de continuar proveyendo alimentos a la peticionaria. Señaló que, había sido diagnosticado con cáncer y estaba recibiendo tratamiento, cuyos costos excedían su ingreso mensual del Seguro Social. Por ello, reiteró que su obligación económica estaba comprometida, y solicitó fuera relevado de la pensión excónyuge, siendo efectiva desde el 26 de octubre de 2023.

---

[2] *Moción sobre Representación Profesional y en Oposicion de Relevo de Pensión Ex Cónyuge y Sobre Otros Extremos*, anejo 2 en el recurso de *certiorari*.
[3] *Moción en Solicitud de Desestimación de Solicitud de Continuación de Alimentos Ex Cónyuge de la Demandada y Relevo Total de Obligación Alimentaria del Demandante ante Condición Crónica de Salud*, anejo 3 en el recurso de *certiorari*.

El 4 de marzo de 2025, la señora González presentó *Moción en Cumplimiento de Orden, en Solicitud de Desacato y Sobre Otros Extremos*.[4] Alegó que, el señor Domenech tenía fijada una pensión alimentaria la cual dejó de cumplir desde noviembre de 2023, adeudándole la suma de $44,800.00. Asimismo, resaltó que a quien le correspondía demostrar que no tenía capacidad económica para sufragar la pensión era al recurrido. Por ello, solicitó la continuación de los procedimientos y la celebración de una vista por la cual el señor Domenech no debía ser encontrado incurso en desacato por incumplimiento con su obligación alimentaria.

Finalmente, el 11 de julio de 2025, las partes de epígrafe presentaron una *Moción Conjunta sobre Estipulación*, en la cual indicaron que luego del inicio de la vista evidenciaria, llegaron a varias estipulaciones de hechos y documentos.[5]

Así las cosas, el 6 de octubre de 2025, el foro primario emitió la *Resolución* recurrida.[6] Evaluadas las estipulaciones, la prueba documental y el expediente del caso, el Tribunal realizó ochenta y cinco (85) determinaciones de hechos. En vista de dichos hechos, el foro *a quo* concluyó que la señora González no estaba incapacitada para valerse por sí misma y generar sus propios ingresos. Asimismo, indicó que la peticionaria había podido cumplir con sus pagos y obligaciones, a pesar de no haber estado recibiendo la pensión, ya que también recibía ayuda de sus hijos, el pago del Seguro Social, y beneficios del Gobierno de Puerto Rico. De

---

[4] *Moción en Cumplimiento de Orden, en Solicitud de Desacato y Sobre Otros Extremos*, anejo 4 en el recurso de *certiorari*.
[5] *Moción Conjunta sobre Estipulación*, anejo 6 en el recurso de *certiorari*.
[6] *Resolución*, anejo 1 en el recurso de *certiorari*.

otra parte, mencionó que la propiedad hereditaria del señor Domenech, según la prueba presentada, era parte de una comunidad hereditaria y sobre la cual tenían una deuda ante el CRIM. Asimismo, dispuso que el incumplimiento con el pago de la pensión excónyuge desde noviembre de 2023 era justificada, dado que, el recurrido no tenía capacidad económica para continuar con el pago. Añadió que, el señor Domenech había sido diligente al informar su nueva realidad económica y condición de salud, por lo que, cumplió con la carga probatoria para establecer que carecía de los medios económicos para pagar la pensión. Finalmente, declaró *Ha Lugar* la *Moción en Solicitud de Relevo de Pensión Ex Cónyuge* instada por el recurrido. Consecuentemente, ordenó el relevo de la pensión alimentaria, retroactivo a la fecha de la solicitud del señor Domenech.

Inconforme, el 10 de noviembre de 2025, la peticionaria presentó el recurso de epígrafe, mediante el cual planteó los siguientes señalamientos de error:

> **PRIMER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE PONCE, AL ORDENAR EL RELEVO DE PENSIÓN ALIMENTARIA A LA FECHA DE LA RADICACIÓN DE LA MOCIÓN, 11 DE SEPTIEMBRE DE 2023.

> **SEGUNDO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL RELEVAR AL PETICIONADO DEL PAGO DE LA PENSIÓN EXCÓNYUGE CUANDO ÉSTE CUENTA CON INGRESOS SUFICIENTES PARA PAGAR DICHA PENSIÓN EN LA ALTERNATIVA EL TRIBUNAL DEBIÓ AJUSTAR [REDUCIR] LA PENSIÓN IMPUESTA Y NO DEJARLA SIN EFECTO.

El 12 de noviembre de 2025, emitimos una *Resolución* en la cual le concedimos a la parte recurrida el término de quince (15) días a partir de la fecha de presentación del recurso, para presentar su alegato en oposición.

El 25 de noviembre de 2025, el señor Domenech presentó su *Memorando en Oposición de la Parte Recurrida a la Expedición de la Petición de Certiorari.*

Con la comparecencia de todas las partes, procedemos a atender el recurso de epígrafe.

**II.**

**-A-**

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023); *800 Ponce de León v. AIG,* 205 DPR 163 (2020); *Pueblo v. Díaz de León*, 176 DPR 913 (2009). En particular, es un recurso mediante el cual se solicita la corrección de un error cometido por un foro inferior. *Torres González v. Zaragoza Meléndez,* supra. Así pues, la determinación de expedir o denegar un recurso de *certiorari* está enmarcada en la discreción judicial. *800 Ponce de León v. AIG,* supra. Es decir, la característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023). No obstante, la discreción judicial para expedir o no el auto de *certiorari* solicitado no ocurre en un vacío ni en ausencia de unos parámetros. *Torres González v. Zaragoza Meléndez*, supra.

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 del Reglamento del Tribunal de

Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. *Torres González v. Zaragoza Meléndez,* supra. En lo pertinente, la precitada disposición reglamentaria establece:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:
>
> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debemos utilizarlo con cautela y por razones de peso. *Pueblo v. Díaz de León*, supra.

Ahora bien, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la discreción significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. *Pueblo v. Rivera Santiago,* 176 DPR 559 (2009); *García v. Padró,* 165 DPR 324 (2005). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente

atado al concepto de la razonabilidad". *Pueblo v. Ortega Santiago,* 125 DPR 203 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. *BPPR v. SLG Gómez-López*, supra; *Pueblo v. Rivera Santiago*, supra; *SLG Flores, Jiménez v. Colberg,* 173 DPR 843 (2008).

-B-

En nuestra jurisdicción los alimentos están revestidos del mayor interés público. *Cortés Pagán v. González Colón*, *supra*; *Cantallops v. Cautino Bird,* 146 DPR 791 (1998). No obstante, una persona divorciada no siempre tendrá derecho a ser alimentada por su excónyuge. Los alimentos entre excónyuges tienen su fundamento en el deber jurídico que establece el Artículo 109 del Código Civil, 31 LPRA ant. sec. 385, de prestarse estos, cuando no cuenten con medios suficientes para vivir. Como se sabe, la obtención de tales alimentos está supeditada a la existencia de una situación de necesidad económica. *Toppel v. Toppel*, 114 DPR 16 (1983). *Soto López v. Colón Meléndez,* 143 DPR 282 (1997).

La redacción del precitado artículo no da lugar a dudas de que la imposición a una persona de la obligación de proveer alimentos a su excónyuge dependerá de la sana discreción del foro primario. Dicha discreción podrá ejercerse si se dan las circunstancias establecidas en el caso de *Fenning v. Tribunal Superior*, 96 DPR 615, 621 (1968). En este, nuestro Tribunal Supremo estableció las siguientes circunstancias: que el o la alimentista (1) haya emergido como cónyuge inocente del pleito de

divorcio, (2) demuestre que no cuenta con suficientes medios para vivir, y (3) establezca que su excónyuge cuenta con bienes suficientes para proveerle una pensión alimenticia. *Íd.*

En cuanto a este particular, el Artículo 109 del Código Civil de Puerto Rico, *supra*, establece:

> Si decretado el divorcio por cualquiera de las causales que establece el Artículo 96 de este código, cualesquiera de los excónyuges no cuentan con suficientes medios para vivir, el Tribunal Superior [Tribunal de Primera Instancia] podrá asignarle alimentos discrecionales de los ingresos, rentas, sueldos o bienes que sean de la propiedad del otro cónyuge.
>
> El Tribunal concederá los alimentos a que se refiere el párrafo anterior, teniendo en cuenta, entre otras, las siguientes circunstancias:
>
> (a) Los acuerdos a que hubiesen llegado los excónyuges.
>
> (b) La edad y el estado de salud.
>
> (c) La cualificación profesional y las probabilidades de acceso a un empleo.
>
> (d) La dedicación pasada y futura a la familia.
>
> (e) La colaboración con su trabajo en las actividades mercantiles, industriales o profesionales del otro cónyuge.
>
> (f) La duración del matrimonio y la convivencia conyugal.
>
> (g) El caudal y medios económicos y las necesidades de uno y otro cónyuge.
>
> (h) Cualquier otro factor que considere apropiado dentro de las circunstancias del caso.
>
> Fijada la pensión alimentaria, el juez podrá modificarla por alteraciones sustanciales en la situación, los ingresos y la fortuna de uno u otro excónyuge. La pensión será revocada mediante resolución judicial si llegase a hacerse innecesaria, o por contraer el cónyuge divorciado acreedor a la pensión nuevo matrimonio o viviese en público concubinato.

Al momento de evaluar una solicitud de modificación o relevo de pensión excónyuge la posición social en que se hallaba el alimentista antes del divorcio no es un factor determinante. En otras palabras, el criterio de

la posición social de la familia para conceder alimentos cambia cuando los cónyuges han obtenido el divorcio. El mismo se sustituye por el criterio de la necesidad del alimentista y capacidad económica del excónyuge alimentante. *Kantara Malty v. Castro Montañez*, 135 DPR 1 (1994).

Asimismo, "los dictámenes sobre pensiones alimentarias de excónyuges siempre están sujetos a modificación, según cambie sustancialmente la capacidad del alimentante para proveer alimentos o la necesidad del alimentista." *Cortés Pagán v. González Colón*, supra; *Cantellops v. Cautino Bird*, supra, pág. 806.

-C-

Es principio reiterado que la apreciación de la prueba realizada por los Tribunales de Primera Instancia debe ser objeto de deferencia por los tribunales apelativos. *McConell v. Palau*, 161 DPR 734, 750 (2004). Una parte interesada en que descartemos tal apreciación de la prueba tiene la obligación de demostrar que medió pasión, prejuicio, parcialidad o error manifiesto de parte del juzgador apelado. Regla 42.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2; *Lugo v. Mun. de Guayama*, 163 DPR 208, 221 (2004); *McConnell v. Palau*, supra, pág. 750.

Como regla general, el Tribunal de Apelaciones no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que realizó el foro primario ni debe sustituirlas por las suyas. *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717, 741 (2007). Ello es así, debido a que, es el Tribunal de Primera Instancia quien tiene la oportunidad de evaluar el comportamiento de los testigos y sus reacciones durante el juicio.

*López v. Dr. Cañizares*, 163 DPR 119, 136 (2004). Sin embargo, esta norma no es absoluta, ya que el apelante puede presentar prueba que demuestre que la apreciación hecha por el foro sentenciador no fue la correcta o no está refrendada por la prueba presentada y admitida. *Serrano Muñoz v. Auxilio Mutuo*, supra, pág. 741.

En ausencia de error, prejuicio y parcialidad, los tribunales apelativos no intervendrán con las determinaciones de hechos, apreciación de la prueba, ni credibilidad adjudicada por el Tribunal de Instancia. *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 811 (2009).

Ahora bien, quien impugne una sentencia o resolución deberá presentar evidencia sustancial que derrote la presunción de corrección que cobija la decisión del Tribunal de Primera Instancia. Esto es, evidencia que en una mente razonable pueda aceptarse como adecuada para sostener una conclusión. *Vázquez Cintrón v. Banco Desarrollo,* 171 DPR 1, 25 (2007).

### III.

En el caso de autos, la señora González plantea dos señalamientos de error, que por estar íntimamente relacionados los discutiremos en conjunto. En estos, alega que incidió el foro primario al ordenar el relevo de pensión alimentaria. Sostiene que, las pensiones son efectivas al momento en que se imponen, y se relevan del pago al momento de la determinación del Tribunal, por lo que, el foro primario erró al concluir que procedía el relevo desde la solicitud del recurrido. De otra parte, reitera que el señor Domenech debe recibir otros ingresos no reportados, y que le adeudaba una suma de $56,000.00 por haber dejado de pagar la pensión. Por

consiguiente, insiste en que lo que procedía era modificar la pensión y no relevarlo del pago.

Luego de evaluar el recurso y analizar el expediente ante nos, concluimos no expedir el auto solicitado. No obstante, a pesar de que no tenemos que fundamentar nuestra determinación al denegar un recurso de *certiorari*, en ánimo de que no quede duda en la mente de las partes sobre los fundamentos al denegar, decidimos ejercer nuestra facultad revisora. Veamos.

En el caso ante nos, el foro primario evaluó la prueba documental y testifical durante las vistas, además de las estipulaciones llegadas por las partes, y, en consecuencia, emitió la *Resolución* del 9 de octubre de 2025. En esta, declaró *Ha Lugar* la *Moción en Solicitud de Relevo de Pensión Ex Cónyuge* instada por el recurrido. Consecuentemente, ordenó el relevo de la pensión alimentaria excónyuge a favor de la peticionaria, debido a los cambios significativos en la capacidad económica del señor Domenech, siendo retroactiva a la fecha de la solicitud.

Según surge de los hechos establecidos, el recurrido pagaba $2,800.00 mensuales por concepto de pensión excónyuge, más el plan médico a la señora González. Al momento de haber llegado al acuerdo, el señor Domenech trabajaba como médico y no había sido diagnosticado con cáncer. Por ello, luego de haber tomado la decisión de retirarse, y reconocer que sus ingresos se reducirían, el 11 de septiembre de 2023, solicitó un relevo de pensión excónyuge. Alegó que, efectivo al 26 de octubre de 2023, su renuncia y retiro provocarían una nueva realidad económica lo que le impedía continuar asumiendo el pago de la pensión.

Posteriormente, el 23 de enero de 2025, el recurrido instó una moción de desestimación y relevo total de la pensión excónyuge. En esencia, mencionó que la peticionaria había abandonado su causa de acción por más de seis meses. Asimismo, informó que había iniciado un tratamiento por cáncer en la próstata, lo que provocó encontrarse inhabilitado para continuar pagando la pensión.

Conforme establece nuestro ordenamiento jurídico, una vez impuesta la obligación de pagar pensión excónyuge, la parte alimentante tiene que hacer los ajustes necesarios para cumplir con dicho deber. Por lo que, de no poder cumplir con su obligación como alimentante, deberá acudir al foro pertinente para solicitar el remedio que corresponda. De esta manera, los dictámenes sobre pensiones alimentarias de excónyuges siempre están sujetos a modificación, según cambie sustancialmente la capacidad del alimentante para proveer alimentos o la necesidad del alimentista. *Cortés Pagán v. González Colón*, supra; *Cantellops v. Cautino Bird*, supra, pág. 806.

Como puede observarse, el ingreso que sirvió de base para la pensión excónyuge al momento de la estipulación luego de la sentencia de divorcio sufrió un cambio sustancial. A pesar de que la señora González dejó de recibir la pensión excónyuge, conforme surge del expediente, está recibiendo el beneficio del Seguro Social de $969.00; recibe el beneficio del Plan de Asistencia Nutricional de $200.00; tiene plan médico del Gobierno de Puerto Rico; y la ayuda de sus hijos. Asimismo, mencionó que el recurrido le adeudaba la pensión desde el 2023, pero no fue hasta el 2025, que

realizó el reclamo de la alegada deuda. Así las cosas, la solicitud de relevo del señor Domenech fue realizada debido a las modificaciones en su ingreso, que surgen de los hechos probados ante el foro *a quo*, y demostraron un cambio sustancial en la capacidad del alimentante para proveer alimentos.

En consideración a lo anterior, actuó conforme a derecho el Tribunal de Primera Instancia al realizar el relevo de la pensión excónyuge a raíz de las alteraciones y cambios sustanciales del señor Domenech. En virtud de ello, procede la confirmación de la decisión emitida por el foro primario.

**IV.**

Por los fundamentos antes expuestos, **EXPEDIMOS** el auto de *certiorari* y **CONFIRMAMOS** la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones